## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DR. MICHAEL B. CANALES, | ) | |
| JOHN DOE 20, | ) | Case No. 2:21-cv-02562-MHW-EPD |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT THE OHIO STATE UNIVERSITY'S
### REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## I.    INTRODUCTION.

Plaintiffs have filed a motion (Doc. 11) asking the Court to accept their late-filed opposition brief to Ohio State's motion to dismiss (Doc. 9), and have attached the opposition brief to the motion (Doc. 11). Contrary to plaintiffs' representation, plaintiffs' 29-page opposition brief was ten days late (not two days late). Nonetheless, for purposes of judicial efficiency, Ohio State files this, its legal reply brief in support of its motion to dismiss to respond to plaintiffs' legal arguments.

Plaintiffs' opposition brief lacks substantive merit. Plaintiffs' opposition does not dispute that a two-year statute of limitations applies to their Title IX claims. Plaintiffs also admit "[i]t is undisputed that the acts of Dr. Strauss occurred years ago." Opp. (Doc. 11) at 20. These admissions are dispositive of the statute of limitations issue because courts consistently hold that Title IX claims accrue at the time of the alleged abuse.

In regard to their fraudulent concealment claim, plaintiffs admit that fraudulent concealment is not an independent cause of action. Plaintiffs also make no attempt to distinguish the numerous authorities cited in Ohio State's motion to dismiss that fraudulent-concealment

tolling of the statute of limitations does not apply where, as here, plaintiffs' allegations establish that they knew or reasonably should have known of their injuries at the time of the alleged abuse.

In regard to their Title IX retaliation claim, plaintiffs admit they cannot state such a claim unless they suffered a school- or education-related retaliatory action. Here, that is impossible. It is undisputed that plaintiffs were *former* students in the summer of 2018, when the alleged retaliatory acts began. Plaintiffs also continue to base their retaliation claim on alleged conduct directed at unidentified plaintiffs or individuals who are not plaintiffs in this lawsuit, and conduct allegedly committed by Ohio State "former employees, friends, and/or benefactors" whose actions cannot be imputed to Ohio State.

Finally, plaintiffs make no attempt to refute the cases decided by this Court cited in Ohio State's motion to dismiss holding that Eleventh Amendment sovereign immunity bars plaintiffs' Section 1983 claims.

## II. PLAINTIFFS' TITLE IX CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.

### A. Courts Routinely Dismiss Title IX Claims Based On The Statute Of Limitations.

Plaintiffs admit that a two-year statute of limitations governs their Title IX claims. Opp. (Doc. 11) at 17-18. They also do not dispute that dismissal is warranted if "the complaint shows conclusively on its face that the action is time-barred." *Id*. at 16 (citing *Allen v. Andersen Windows, Inc*., 913 F.Supp.2d 490, 500 (S.D. Ohio 2012)). Plaintiffs additionally state, however, that it is "inappropriate to dismiss an action on statute of limitations grounds on a Rule 12(b)(6) motion." *Id*. (citing *Cataldo v. U.S. Steel Corp*., 676 F.3d 542 (6th Cir. 2012)). Plaintiffs citations to *Cataldo* and *Allen* do not assist them because both cases ***dismissed*** or ***affirmed dismissals*** pursuant to Rule 12(b)(6) based on the applicable statute of limitations.

Consistent with *Cataldo* and *Allen*, Courts routinely grant Fed. R. Civ. P. 12(b)(6) motions to dismiss claims that are barred by the statute of limitations. Numerous courts, including those cited in Ohio State's motion to dismiss, have dismissed **Title IX** claims pursuant to Rule 12(b)(6) or Rule 12(c) because the pleadings, like plaintiffs' complaint here, affirmatively demonstrated that the Title IX claims were time-barred. All apply, and plaintiffs cannot avoid them. *See*, *e.g.*, *Gilley v. Dunaway*, 572 F. App'x 303, 308-309 (6th Cir. 2014); *Giffin v. Case W. Reserve Univ.*, No. 98-3267, 1999 WL 238669, at *1 (6th Cir. Apr. 13, 1999); *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *2-3 (W.D. Mich. May 26, 2017); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 671 (E.D. Ky. 2009); *Bannister, et al. v. Knox County Board of Education, et al*., No. 3:18-CV-188, 2021 WL 2685193, at *7 (E.D. Tenn. June 30, 2021); *Forrester v. Clarenceville Sch. Dist*., No. 20-12727, 2021 WL 1812700, at *4-7 (E.D. Mich. May 6, 2021).[1]

### B.    Plaintiffs Misstate the Fed. R. Civ. P. 12(B)(6) Standard.

Plaintiffs misstate the Rule 12(b)(6) standard governing dismissal of their Title IX claims based on the statute of limitations. While plaintiffs reference *Iqbal* and *Twombly*'s plausibility

---

[1] *See also Doe v. Univ. of S. California*, No. 218CV09530SVWGJS, 2019 WL 4229750, at *3-7 (C.D. Cal. July 9, 2019); *Doe v. Univ. of S. California*, No. 218CV09530SVWGJS, 2019 WL 4228371, at *3-7 (C.D. Cal. Apr. 18, 2019); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761-765 (5th Cir. 2015); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 433, 440-441 (S.D.N.Y.), *aff'd*, 579 F. App'x 7, *9-10 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015); *Doe v. Howe Military Sch*., 227 F.3d 981, 987-989 (7th Cir. 2000); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr*., No. CIV-09-533-L, 2010 WL 152138, at *2 (W.D. Okla. Jan. 14, 2010); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6-7 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014); *Singleton v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, No. 00C395, 2000 WL 777925, at *19-20 (N.D. Ill. June 13, 2000); *Ikedilo v. Statter*, No. 19-CV-9967 (RA), 2020 WL 5849049, at *7 (S.D.N.Y. Sept. 30, 2020); *Washington v. Univ. of Maryland, E. Shore*, No. CV RDB-19-2788, 2020 WL 5747199, at *1, *5 (D. Md. Sept. 24, 2020); *Doe v. Colorado Cmty. Coll. Sys.*, No. 18-CV-1068-WJM-NRN, 2020 WL 5320810, at *1 (D. Colo. Sept. 4, 2020); *Mazza v. Tarleton State Univ.-Waco*, No. 619CV00373ADAJCM, 2020 WL 5997049, at *3-4 (W.D. Tex. Aug. 20, 2020), *report and recommendation adopted*, No. 6-19-CV-00373-ADA, 2020 WL 5984060 (W.D. Tex. Oct. 8, 2020), *appeal dismissed*, No. 20-50931, 2021 WL 1922832 (5th Cir. Mar. 25, 2021); *Burke v. Basil*, No. SACV20635JVSJDEX, 2020 WL 4435138, at *8 (C.D. Cal. July 23, 2020); *Kirby v. North Carolina*, No. 5:20-CV-344-BO, 2021 WL 149007, at *3 (E.D.N.C. Jan. 15, 2021); *Celece v. Dunn Sch.*, No. CV2010139GWPVCX, 2020 WL 6802027, at *6 (C.D. Cal. Nov. 19, 2020); *Franco v. Mesa Pub. Sch.*, No. CV-20-01129-PHX-DJH, 2020 WL 7388489, at *3-5 (D. Ariz. Dec. 16, 2020).

standard, they also cite to no longer existing law that "a Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[2] Opp. (Doc. 11 at 17 (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  *See Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 563 (2007) (stating that the prior "no set of facts" Rule 12(b)(6) standard "has earned its retirement").

To avoid a Rule 12(b)(6) dismissal under *Twombly* and *Iqbal*, the correct standard, plaintiffs must allege that the timeliness of their claims is not merely "possible," but "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.  The plausibility analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679.  Plaintiffs' "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  The Court also "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995).

## C.    The Discovery Rule Does Not Apply.

Plaintiffs contend that the Supreme Court's rejection of the discovery rule in *Rotkiske v. Klemm* is distinguishable because "the plain text of the statute in that case involved a statute which unambiguously set the date of the violation that started the statute of limitations to run." Opp. (Doc. 11) at 21. Plaintiffs are incorrect.

Rather than limit its criticism of the discovery rule to the Fair Debt Collections Practices Act ("FDCPA"), the Supreme Court in *Rotkiske* broadly characterized the discovery rule as a

---

[2] While acknowledging that federal law governs both the Rule 12(b)(6) dismissal standard and when a Title IX claim accrues, plaintiffs also improperly cite to inapplicable Ohio Supreme Court cases.  *See* Opp. (Doc. 11) at 14 & 19 (citing *Fletcher v. Univ. Hosp. of Cleveland*, 120 Ohio St. 3d 167 (2008) and *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St. 3d 529 (2011)).

"bad wine of recent vintage." *Rotkiske*, 140 S. Ct. at 361. The majority opinion in *Rotkiske* was authored by Justice Thomas, who was quoting Justice Scalia's concurring opinion in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). *Id*. In *TRW*, the majority opinion noted that "while many federal courts 'apply a discovery accrual rule when a statute is silent on the issue,' the Court 'has not adopted that position as [its] own.'" *See Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at *4 (E.D. Mich. May 6, 2021) (quoting *TRW*, 534 U.S. at 27). Seven justices of the Supreme Court—Roberts, Breyer, Alito, Sotomayor, Kagan, Gorsuch, and Kavanaugh—joined in Justice Thomas' majority opinion in *Rotkiske*, for a total of **eight out of nine justices** agreeing that the discovery rule is a "bad wine of recent vintage."

Plaintiffs do not dispute that neither the Supreme Court nor the Sixth Circuit has ever held that the discovery rule applies to claim accrual under Title IX. As discussed in Ohio State's motion to dismiss, *Rotkiske*'s broad warning to courts not to "read in" the discovery rule to "enlarge[] federal statutes" has garnered the Sixth Circuit's recent attention with respect to claims brought pursuant to Section 1983 which, like Title IX, does not contain an express statute of limitations and borrows the state personal injury limitations period. *See Forrester*, 2021 WL 1812700, at *3. This year, the Sixth Circuit confirmed in a case involving Section 1983 claims that there is no longer any presumption favoring the discovery rule and expressly questioned whether "our cases imbibing this 'bad wine' warrant reconsideration" in light of *Rotkiske*. *See Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (holding plaintiff's Section 1983 claims were untimely under both the standard and discovery accrual rules).

Ohio's two-year personal injury statute of limitations, from which both Title IX and Section 1983 borrow, requires that an action be brought within a period of years after the cause of action "accrues." *See Everly v. Everly*, 958 F.3d 442, 460-461 (6th Cir. 2020) (quoting 17

U.S.C. § 507(b)); *Sykes v. United States*, 507 F. App'x 455, 462 (6th Cir. 2012); OHIO REV. CODE § 2305.10(A). The Supreme Court has "repeatedly said" that "the plain meaning of 'accrue' triggers the occurrence rule," in which the statute of limitations begins to run when a violation of the plaintiff's legal right has occurred, not later when the plaintiff discovers or should have discovered the cause of action. *See Everly*, 958 F.3d at 460, 462 (citing *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *U.S. v. Lindsay*, 346 U.S. 568, 569 (1954); *Fisher v. Whiton*, 317 U.S. 217, 221 (1942)). The accrual rule fosters "basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Gabelli*, 568 U.S. at 448 (citation omitted). Plaintiffs' Title IX claims accrued when Strauss is alleged to have abused them.[3]

> ### D. Plaintiffs Pled They Were Aware Or Suspicious That The Claimed Acts Were Abusive At The Time They Occurred.

As discussed, the discovery rule does not apply. Even applying the discovery rule, however, plaintiffs' Title IX claims are time-barred. Plaintiffs do not dispute the discovery rule principles set forth in Ohio State's motion to dismiss. *See* MTD (Doc. 9) at 11-16. Based on those principles, plaintiffs' argument that "Plaintiffs did not and could not reasonably have known that the medical treatment they were receiving from Dr. Strauss was sexual misconduct" until May 2019 when the Perkins Coie Report was published is not plausible. Opp. (Doc. 11) at 20. Plaintiffs allege all of the following:

**Plaintiff Dr. Canales**
(1) Despite seeing Strauss for "a physical injury and/or sickness," plaintiff Dr. Canales alleges Strauss "sexually assaulted him" by "excessively fondling Plaintiff Canales

---

[3] Plaintiffs' additional argument that *Rotkiske* is distinguishable because a fraud-specific discovery rule applies to delay the commencement of the statute of limitations lacks merit. *See* Opp. (Doc. 11) at 21. While the *Rotkiske* Court held that the fraudulent-concealment tolling issue had not been preserved, the Court also stated that it was not deciding whether such tolling was permitted under the Fair Debt Collection Practices Act or whether the plaintiff's claim fell within the scope of such tolling doctrine. *Rotkiske*, 140 S. Ct. at 361 n.3. As discussed in Ohio State's motion to dismiss and below, fraudulent-concealment tolling does not apply to toll the statute of limitations on plaintiffs' Title IX claims here. *See* MTD (Doc. 9) at 16-18; *infra* Section III.

testicles in one of Dr. Strauss' hands as Dr. Strauss maneuvered Plaintiff Canales' penis in Dr. Strauss' other hand," Compl. (Doc. 1) at ¶¶ 47-48;

(2) At the time of the abuse, plaintiff Dr. Canales admits he believed Strauss was "trying to arouse Plaintiff Canales," *id*. at ¶ 48;

(3) "Plaintiff Canales states that Dr. Strauss would regularly inquire about his sexual activity," *id*. at ¶ 49; and

(4) Plaintiff Dr. Canales does not dispute he is a medical professional himself, *see* OSU MTD (Doc. 9) at 13.

**Plaintiff John Doe 20**

(1) Despite seeing Strauss for "various illnesses/injuries," plaintiff John Doe 20 alleges Strauss "attempted to masturbate him" and "manipulate Plaintiff John Doe 20's penis in an excessive manner," Compl. (Doc. 1) at ¶ 53;

(2) At the time of the abuse, plaintiff John Doe 20 admits he believed Strauss was attempting "to arouse his penis," *id*.;

(3) Plaintiff John Doe 20 was examined by Strauss "over thirty (30) times in his career at OSU," but admits Strauss "attempted to masturbate him on at least six (6) occasions," *id*.—indicating that John Doe 20 was able to distinguish between conduct that was inappropriate or abusive and conduct that was not;

(4) "Strauss never wore medical gloves during any of his examinations," *id*. at ¶ 54; and

(5) "Dr. Strauss always seemed to be the first guy into the showers and the last guy to leave the showers at Larkins Hall. Also, on numerous occasions, Dr. Strauss would leave to take a second shower if a new group of athletes entered the shower area," *id*. at ¶ 55.

**Both Plaintiffs**

(1) Both plaintiffs characterize the abuse they experienced from Strauss as "heinous" and "abhorrent," Opp. (Doc. 11) at 1, 19-20;

(2) Both plaintiffs allege that "Plaintiffs had a strong inclination that Dr. Strauss' exams were medically inappropriate," Compl. (Doc. 1) at ¶ 82;

(3) Both plaintiffs allege Strauss "regularly administer[ed] Anabolic Steroids" to athletes, *id*. at ¶ 152;

(4) Both plaintiffs allege that the abuse by Strauss and the sexually hostile environment at Larkins Hall were "so severe, pervasive, and objectively offensive" that they caused both plaintiffs to "suffer[] and continue to suffer emotional distress, physical manifestations of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life," *id*. at ¶¶ 123-124, 126, 130, 139, 147(c), 180;

(5) Neither plaintiff disputes that, as a national, Olympic, and/or state champion or placer, he was examined by other physicians both prior to, during, and subsequent to their examinations by Strauss, and was able to compare appropriate conduct by physicians with the alleged inappropriate conduct by Strauss, *id.* at ¶¶ 45-46, 51-52; *see also* MTD (Doc. 9) at ¶ 13;

(6) Both plaintiffs allege that Strauss' conduct was so "rampant," "pervasive," and "widespread" that both Strauss' conduct and Ohio State's deliberate indifference to it were "commonly known information" among students and student-athletes at Ohio

State, Compl. (Doc. 1) at ¶¶ 24(b), 36, 102, 123, 126, 130, 139, 157, 159;

(7) Both plaintiffs allege that Strauss' conduct was so objectively inappropriate that students and student-athletes made "repeated and numerous complaints" to Ohio State officials, administrators, employees, and coaches, *id*. at ¶¶ 22, 24(d)-(e), 32, 36, 115, 118(f), 131; and

(8) Both plaintiffs do not dispute that they knew Ohio State was Strauss' employer, MTD (Doc. 9) at 15.

The above allegations affirmatively establish that each plaintiff knew, or a reasonable lay person would, ***at a minimum***, have been suspicious, of possible abuse, thereby triggering his duty to investigate and protect his rights. *See United States v. Kubrick*, 444 U.S. 111, 123 (1979) (a plaintiff who is unsure about whether conduct by a government physician constitutes a tort against him "can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 429, 440 (S.D.N.Y. 2014) ("The plaintiffs were aware of their abuse at the time it occurred, and of the identity of their abusers and those who employed them—thus, had the plaintiffs approached an attorney [], they could have brought their claims under Title IX.").

Plaintiffs' allegations also contradict their conclusory position that they were unaware or did not suspect Strauss abused them until decades later, and should not be accepted by the Court. *See*, *e.g.*, *Doe v. Univ. of S. California*, No. 218CV09530SVWGJS, 2019 WL 4228371, at *4 (C.D. Cal. Apr. 18, 2019) ("Plaintiff's argument that she could not have discovered Dr. Tyndall's examination constituted sexual misconduct until 2018 is implausible, since Plaintiff undoubtedly had further gynecological examinations by other medical professionals after Dr. Tyndall over the 27 years since and would have had a basis to conclude that Dr. Tyndall's conduct fell outside of medically acceptable standards."); *Doe v. Pasadena Hosp. Assn., Ltd.*, 2020 WL 1529313, *5

(C.D. Cal. Mar. 31, 2020) ("[T]he Court need not blindly accept Plaintiff's allegation that she only became aware of" sexual abuse by her gynecologist when a newspaper published a report about the physician's misconduct "because the factual allegations directly contradict such an assertion"); *USC*, 2019 WL 4228371, at *4 ("The fact that Plaintiff only learned [in 2018] that she was not the only female patient abused by Dr. Tyndall [during a gynecological exam] does not affect Plaintiff's knowledge of the abuse she received back in 1991"); *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, at *8 (D.D.C. 2019) (holding that the discovery rule did not delay accrual of a claim where a survivor of sexual abuse "recall[ed] that abuse but d[id] not appreciate its wrongfulness" at the time).

Tellingly, plaintiffs do not cite any case involving Title IX claims to support their position that they were unaware Strauss abused them at the time it occurred. Instead, they misstate Ohio State's reliance on certain cases cited in its motion to dismiss as follows:

(1) Plaintiffs incorrectly state that the Title IX claim in *Giffin v. Case W. Reserve Univ.*, 181 F.3d 100 (6th Cir. 1999) was dismissed "because the plaintiffs failed to state a claim under Title IX, not because the claims were time-barred." Opp. (Doc. 11) at 22. As copied verbatim from the Sixth Circuit's opinion: "The order of dismissal was predicated on the district court's determination that the suit was filed after the two-year statutory period had run, rejecting the plaintiff's claim that the University was guilty of a continuing violation of Title IX due to its failure to promulgate a 'consensual sexual relations' policy." *Id*. at *1. The Sixth Circuit affirmed, holding: "The district court's analysis of the effect of the statute of limitations was correct in all respects." *Id*.

(2) In *Adams v. Ohio University*, 300 F. Supp. 3d 983 (S.D. Ohio 2018), the court found that "[t]he underlying harm in Plaintiffs' complaint is the sexual harassment that occurred against each of them[.]" *Id*. at 996. The *Adams* court held that plaintiffs' Title IX injuries accrued when they were sexually harassed by their professor, which, unlike plaintiffs here, had occurred within two years of the filing of the complaint. *Id*. The difference between *Adams* and the instant matter is that for purposes of the accrual of the Title IX claim in *Adams*, the harassment at issue did not involve remote-in-time allegations of abuse like plaintiffs' claims here. *See id*. at 989, 991, 993.

(3) Plaintiffs are incorrect in stating that the dismissal in *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662 (E.D. Ky. 2009) "was based upon deficient pleadings." Opp. (Doc. 11) at 22. In fact, the court in *Anderson* dismissed the plaintiffs' Title IX and

Section 1983 claims with prejudice as barred by the statute of limitations.  *Id*. at 671.

(4)    Plaintiffs' effort to distinguish the court's dismissal of Title IX claims based on the statute of limitations in *Gilley v. Dunaway*, 572 F. App'x 303 (6th Cir. 2014) also fails.  In *Gilley*, the Sixth Circuit held that the plaintiff's Title IX claims accrued at the time of the alleged abusive acts by her high school coach (tolled until she reached the age of majority); fraudulent-concealment tolling of her claims did not apply; and the plaintiff's claims were time-barred because she waited six years after Kentucky's one-year limitations period had expired to sue.

(5)    Plaintiffs are wrong that *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587 (W.D. Mich. May 26, 2017) "supports a conclusion that the continuing violation theory is applicable to the case at bar and precludes dismissal."  Opp. (Doc. 11) at 22. The court in *Bowling* dismissed the plaintiff's Title IX claims with prejudice based on the statute of limitations, finding that the plaintiff's Title IX claims "accrued at the latest" on the day of the last sexual assault against the plaintiff and that the continuing violation doctrine "does not apply." *Bowling*, 2017 WL 2894491, at *2.[4]

In fact, dismissal here based on the statute of limitations is even more appropriate than in the above-cited cases because both plaintiffs here, unlike the plaintiffs in those cases, allege ***all*** of the following: detailed and extensive facts demonstrating each plaintiff's knowledge or suspicion of abuse and harm at the time of the abuse; widespread knowledge of the abuser's inappropriate conduct at the time; widespread contemporaneous complaints about the abuser's conduct; and that the school's alleged indifference to the alleged abuse was widely known.[5]

## E.    Plaintiffs Were Aware Of The Claimed Causal Connection Between The Alleged Abuse And Ohio State.

Plaintiffs assert that even if they were aware or suspicious that Strauss may have abused them, their Title IX claims did not accrue until Perkins Coie issued its report in May 2019

---

[4] *Bowling* is consistent with the Sixth Circuit's observation that "Courts have been extremely reluctant to apply" the continuing violation doctrine "outside the context of Title VII." *Dibbern v. Univ. of Michigan*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016) (refusing to apply continuing violation doctrine to Title IX), *quoting LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995); *see also Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 735 (M.D. Tenn. 2018) ("[C]ourts in this circuit and elsewhere have concluded that the doctrine indeed does not apply in Title IX cases.  This Court agrees.").  In fact, "the Sixth Circuit has never before applied the continuing violations doctrine to Title IX claims."  *Dibbern*, 2016 WL 2894491, at *19 (emphasis added).

[5] Plaintiffs do not attempt to distinguish any of the numerous other cases cited in Ohio State's motion to dismiss that dismissed Title IX claims as barred by the statute of limitations.

10

because it was not until then that plaintiffs became aware of Ohio State's alleged "role in causing the abuse." Opp. (Doc. 11) at 6-8, 11. Again, plaintiffs are incorrect.

The Eastern District of Michigan's recent May 6, 2021 opinion rejecting Title IX plaintiffs' argument that "their claims did not accrue when they were injured, but instead when they learned in August 2020 that [their teacher] abused many students and school administrators were notified of the abuse and failed to stop it" is instructive. *Forrester v. Clarenceville* Sch. Dist., No. 20-12727, 2021 WL 1812700, at *5 (E.D. Mich. May 6, 2021). In *Forrester*, the court acknowledged that *Rotkiske* has created a "discrepancy" with decisions holding that the discovery rule applies, and held that "[e]ven if the discovery rule applied to Plaintiffs' federal claims, the claims would accrue when Plaintiffs knew [their teacher] committed the abuse." *Id.* at *6. The court cited numerous Supreme Court, Sixth Circuit, and district court decisions within the Sixth Circuit to support its holding that it is the "injury," *i.e.*, the "abuse," not the plaintiffs' discovery of the other elements of the claim, including plaintiffs' awareness of the "full extent" of the school's deliberate indifference and "knowledge and culpability in failing to report or discipline" the abuser, that starts the running of the statute of limitations. *Id.*[6] Based on the above-cited authorities, the *Forrester* court concluded that plaintiffs had a "complete and present cause of action" at the time of the abuse and that their Title IX claims arising from abuse which occurred more than three years prior to the filing of the complaint (the limitations period under Michigan's personal injury statute) were time-barred. *Id.* at *7 (citing *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)). *Forrester* also is consistent with the Sixth Circuit's decision in

---

[6] *See Rotella v. Wood*, 528 U.S. 549 (2000); *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756 (6th Cir. 2017); *DeShetler v. FCA US, LLC*, 790 F. App'x 664 (6th Cir. 2019); *Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250 (6th Cir. 2017); *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007); *Guy v. Lexington-Fayette Urban Cnty. Gov't*, 488 F. App'x 9, 15 (6th Cir. 2012); *Anderson v. Bd. of Educ. of Fayette Cnty.*, 616 F. Supp. 2d 662 (E.D. Ky. 2009); *Bowling v. Holt Pub. Schs.*, 2017 WL 4512587 (W.D. Mich. May 26, 2017); *Smith v. Tyler*, 2021 WL 1176048 (W.D. Ky. Mar. 29, 2021)).

*Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9 (6th Cir. 2012), which held, in a Section 1983 case, that the limitations period begins running at the time of the abuse, not when the plaintiffs learned of the government's involvement and facilitation of the abuse.  *Id*. at 15.

Plaintiffs do not dispute that, in the cases cited in Ohio State's motion to dismiss, the ruling courts expressly rejected the same arguments plaintiffs make here—that accrual of their Title IX claims had been delayed because the plaintiffs alleged they lacked information about the schools' roles in not preventing the claimed abuse or because the schools concealed it from plaintiffs.  *See* MTD (Doc. 9) at 14-15 & n.3.  In fact, dismissal is even more appropriate in *this* case because—in contrast to both plaintiffs here—none of the plaintiffs in the other cases alleged detailed and extensive facts demonstrating each plaintiff's knowledge or suspicion of abuse and harm at the time of the abuse; widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the conduct; and that the school's alleged indifference to the alleged abuse was widely known.  Plaintiffs additionally do not attempt to refute the numerous cases cited in Ohio State's motion to dismiss refusing to find delayed accrual of Title IX claims where, as here, plaintiffs allege they were aware of: the acts complained of, the abuser's identity, and that the abuser was an employee of the school. *See* MTD (Doc. 9) at 15 & n.4.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT; FRAUDULENT-CONCEALMENT TOLLING DOES NOT APPLY.

Plaintiffs do not dispute that fraudulent concealment is not an independent cause of action.  MTD (Doc. 9) at 16. Accordingly, plaintiffs' Third Cause of Action for fraudulent concealment should be dismissed.

Plaintiffs' various arguments that fraudulent-concealment tolling applies to extend the

statute of limitations on their Title IX claims also lack merit. Opp. (Doc. 11) at 24-28. First, plaintiffs' opposition brief confirms that plaintiffs' fraudulent-concealment tolling theory is based on the same alleged substantive wrongs supporting plaintiffs' Title IX claims, i.e., Ohio State's alleged "fail[ure] to act and report all the misconduct" and "deliberate indifference to the sexually hostile culture and sexual abuse suffered by Plaintiffs[.]" *Id.* at 6. As such, they do not support fraudulent-concealment tolling of the statute of limitations. *See* MTD (Doc. 9) at 16-18.

Second, plaintiffs' argument that they did not realize or suspect Strauss' conduct might be abusive because Ohio State allegedly "concealed" or "hid the truth" from plaintiffs and/or that plaintiffs' investigation of Ohio State's conduct would have been "futile" (Opp. at 24-26) are contradicted by plaintiffs' own detailed and extensive complaint allegations, as previously discussed above.[7] Those allegations establish each plaintiff's knowledge or suspicion of abuse and harm at the time of the abuse; widespread knowledge by students and student-athletes of Strauss' inappropriate conduct and the environment at Larkins Hall; widespread contemporaneous complaints by students and student-athletes about Strauss' conduct; and that Ohio State's alleged indifference to such knowledge and complaints was widely known.

Third, plaintiffs' contentions that Ohio State's misconduct could not have been discovered earlier by plaintiffs because Ohio State itself "did not know abuse had occurred" and "OSU had to hire an independent investigative team and obtain a voluminous report documenting abuse by Dr. Strauss involving over 177 students over the course of 20 plus years" do not support fraudulent-concealment tolling. Opp. (Doc. 11) at 24, 26-27. Plaintiffs conflate the Perkins Coie investigation with the principles governing claim accrual—which Perkins Coie did not address. The investigation regarding Ohio State's knowledge and response to Strauss'

---

[7] Plaintiffs inaccurately state that "Defendant OSU does not deny that it fraudulently concealed information from the Plaintiffs[.]" Opp. (Doc. 11) at 19.

conduct decades ago does not alter plaintiffs' *own* factual allegations, which affirmatively demonstrate their awareness of the abuse and harm they suffered at the time. Based on plaintiffs' own allegations, it is impossible for plaintiffs not to have been at least suspicious of a possible injury, thereby triggering their own duty to investigate whether they were, in fact, injured. Further, the challenge to the current Ohio State administration and the Perkins Coie investigators in attempting to reconstruct what happened decades ago highlights a primary purpose behind the statute of limitations bar. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared"); *see also Gilley*, 572 F. App'x at 308 ("If the Board had been truly trying to conceal its knowledge from [plaintiff], ... it would not have conducted an investigation at all.")

Plaintiffs do not attempt to distinguish the numerous cases cited in Ohio State's motion to dismiss that fraudulent-concealment tolling does not apply here. *See* MTD (Doc. 9) at 18 & n.6. Given the consistent cases cited in Ohio State's motion to dismiss rejecting fraudulent-concealment tolling in Title IX cases, it also is not surprising that plaintiffs found no Title IX cases supporting their fraudulent-concealment tolling theory. The cases plaintiffs do cite involve the same operative facts and the same university, Baylor University, and a single case involving the University of Idaho which relied on the *Baylor* cases. *See* Opp. (Doc. 11) at 25-26. The *Baylor* and *Univ. of Idaho* cases actually support Ohio State's position that plaintiffs' claims are time-barred. The *Baylor* and *Univ. of Idaho* cases held that the Title IX claims alleging the schools were deliberately indifferent to plaintiffs' complaints of sexual assault (the "post-reporting" claims) were ***barred*** by the respective two-year statutes of limitations. *See Doe 1 v.*

*Baylor Univ.*, 240 F. Supp. 3d 646, 663-664 (W.D. Tex. 2017); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 877, n.3 & n. 5 (W.D. Tex. 2019); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 617-618 (W.D. Tex. 2017); *Jameson v. Univ. of Idaho*, 2019 WL 5606828, at *4 (D. Idaho Oct. 30, 2019).

In regard to the courts' refusal to dismiss the Title IX claims alleging that the schools' conduct increased plaintiffs' risks of being sexually assaulted (the so-called "heightened-risk" claims), the *Baylor* decisions were abrogated by the Fifth Circuit, which subsequently held: "We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so." *Poloceno v. Dallas Indep. Sch. Dist.*, No. 20-10098, 2020 WL 5494511, at *3 (5th Cir. Sept. 10, 2020).[8] *Poloceno* also distinguished other courts' recognition of Title IX "heightened risk" claims on the ground that such courts "limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here." *Id*.

As *Poloceno* makes clear, it was critical that the underlying sexual abuse in the *Baylor* and *Univ. of Idaho* cases was student-on-student—not employee-on-student. Had the abuse been employee-on-student, as the plaintiffs allege here, the judge deciding the *Baylor* cases expressly acknowledged he would have held the claims were time-barred:

> The Fifth Circuit [in *King-White*] concluded that the plaintiffs' Title IX claims accrued by the time the victim turned 18 because, even though the plaintiffs (the victim and her mother) did not know until later about certain school policies and prior complaints from other parents about the teacher, they knew the teacher was employed by the school, knew of the abuse, and knew the school had failed to stop the abuse—which, at the least, would have led a reasonable person to investigate further.
>
> Here, however, Plaintiff was sexually assaulted by another student. Unlike the plaintiffs in *King-White*, where the abuser was a school employee, Plaintiff

---

[8] Plaintiffs cite no authority that the Supreme Court, the Sixth Circuit, any district court within the Sixth Circuit, or any federal court of appeals recognizes a Title IX "heightened risk" claim.

therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault.

*Hernandez*, 274 F.Supp.3d at 617 (citing *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 762-763 (5th Cir. 2015)).  The above reasoning is consistent with the numerous Title IX cases cited in Ohio State's motion to dismiss holding that the statute of limitations accrues at the time of the abuse when a plaintiff is aware of the claimed acts, the abuser's identity, and that the abuser was an employee of the school. *See* MTD (Doc. 9) at 15 & n.4.

No court which has recognized a "heightened risk" claim under Title IX has held that special accrual principles apply to such a claim for purposes of the statute of limitations. Additionally, unlike the plaintiffs in *Baylor* and *Univ. of Idaho* who had "no reason" to know of or investigate the universities' conduct in creating the heightened risk of student-on-student sexual abuse until it was exposed by media coverage and/or the release of an independent investigation, *see Doe 1*, 240 F. Supp. 3d at 663 and *Univ. of Idaho*, 2019 WL 5606828, at *8, plaintiffs here expressly allege widespread knowledge of Strauss' inappropriate conduct and of Ohio State's deliberate indifference to it.[9]  Fraudulent-concealment tolling does not apply.

## IV.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR UNLAWFUL RETALIATON.**

Plaintiffs do not dispute that a plaintiff cannot state a claim for retaliation under Title IX unless he suffered a school- or education-related retaliatory action. *See* MTD (Doc. 9) at 18-20; Opp. (Doc. 11) at 28-29.  Plaintiffs also admit that the alleged retaliatory acts which occurred beginning in the summer of 2018 were not *school-* or *education*-related adverse actions.  Nor could they be because both plaintiffs were ***former*** students at that time.

---

[9] Plaintiffs' argument that the "clean hands doctrine" prevents dismissal of their claims also is meritless. Opp. (Doc. 11) at 27. First, equitable defenses such as clean hands do not apply against governmental parties. *Wooster v. Entm't One, Inc*., 2004-Ohio-3846, ¶ 69, 158 Ohio App. 3d 161, 184, 814 N.E.2d 521, 539. Second, as plaintiffs acknowledge, the clean hands doctrine applies only when a party is seeking "equitable relief." Opp. (Doc. 11) at 27; *see also O'Brien v. Ohio State Univ*., 859 N.E.2d 607, 619 n.3 (Ct.of Cl. 2006), *aff'd*, 10th Dist. Franklin No. 06AP-9462007-Ohio-4833. Plaintiffs here seek legal and statutory relief (money damages and a declaration), and Ohio State's motion to dismiss is based upon legal defenses—the statute of limitations and sovereign immunity.

Plaintiffs additionally fail to cite any cases holding that a non-school-related adverse act may support a Title IX retaliation claim. To the contrary, plaintiffs rely upon *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) and *Atkinson v. Lafayette College*, 460 F.3d 447 (3d Cir. 2006), both of which support Ohio State's position that the alleged retaliatory act must be a school-related punishment. The plaintiffs in *Jackson* and *Atkinson* were current school employees who were terminated after they complained about sex discrimination. Termination of school employment is a school-related adverse action.

Plaintiffs attempt to distinguish *Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315 (6th Cir. 2017) on the grounds that "the issue in the case was not the identity of the plaintiff(s) nor any admonition that the plaintiff must be a student." Opp. (Doc. 11) at 29. In *Gordon*, the Sixth Circuit expressly stated that a plaintiff must plead he suffered an adverse "educational action" to state a Title IX retaliation claim. *Gordon*, 686 F. App'x at 320. The retaliatory acts at issue in *Gordon* were educational punishments—suspensions, in-class punishment, social alienation at school, and denial of the opportunity to take a class—against a current student after he complained about sex discrimination. *Id.* at 320-321.

In contrast to *Jackson*, *Atkinson*, and *Gordon*, neither plaintiff here alleges that he was a student or employee at Ohio State who suffered an adverse educational action beginning in the summer of 2018. Accordingly, plaintiffs fail to state a retaliation claim under Title IX.

Additionally, plaintiffs continue to assert that the purported retaliatory conduct was caused by Ohio State "former employees, friends and /or benefactors" whose conduct cannot be imputed to Ohio State. *See* Opp. (Doc. 11) at 28. Plaintiffs' Title IX retaliation claim should be dismissed.

## V.   SOVEREIGN IMMUNITY BARS PLAINTIFFS' SECTION 1983 CLAIMS.[10]

Plaintiffs make no attempt to distinguish the cases decided by this Court cited in Ohio State's motion to dismiss holding that Eleventh Amendment sovereign immunity bars Section 1983 claims specifically against Ohio State.  MTD (Doc. 9) at 20-21.  Plaintiffs also do not address Ohio State's additional argument that plaintiffs fail to state Section 1983 claims because Ohio State is not a "person" subject to suit under Section 1983.  *See id.* at 21.  For these reasons alone, the Court should hold plaintiffs' Section 1983 claims are barred by Eleventh Amendment sovereign immunity.

In regard to the specific arguments plaintiffs make to support their position that their Section 1983 claims are not barred by Eleventh Amendment sovereign immunity, such arguments lack merit for the following reasons:

1)   State instrumentalities, such as Ohio State, are immune from Section 1983 claims, in contrast to political subdivisions of states, such as municipalities and local government defendants, which are not.  *See id.* at 20; *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).

2)   Ohio State has not argued it is immune from suit under Title IX.  Ohio State is, however, immune from suit for alleged violations of Section 1983.  *See* MTD (Doc. 9) at 20-21.

3)   The Supreme Court's holding that Congress has abrogated states' sovereign immunity for back pay and attorneys' fees resulting from violations of ***Title VII***, is irrelevant. In *Fitzpatrick v. Bitzer*, 427 U.S, 445 (1976) the Court did not waive sovereign immunity for ***Section 1983*** claims against states. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, syllabus (1989) ("That Congress, in passing [Section] 1983, had no intention to disturb the States' Eleventh Amendment immunity and so alter the federal-state balance in that respect was made clear in our decision in *Quern*") (citing *Quern v. Jordan*, 440 U.S. 332, syllabus (1979)).

4)   Neither the State of Ohio nor Ohio State has waived immunity from suit in federal court under Section 1983.  *See* MTD (Doc. 9) at 20-21.  "[A] state's waiver of sovereign

---

[10] Plaintiffs misrepresent that Ohio State "asserts that this Court lacks subject matter jurisdiction on all claims." Opp. (Doc. 11) at 14.  That is not true.  Ohio State asserts the Court lacks subject matter jurisdiction only over plaintiffs' Section 1983 claims based on Eleventh Amendment sovereign immunity.  *See* MTD (Doc. 9) at 20-21.

immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp.*, 465 U.S. 100 n.9 (1984). *Nihiser v. Ohio E.P.A.*, 269 F.3d 626 (6th Cir. 2001) addressed Section 504 of the Rehabilitation Act, not Section 1983.

5)     Plaintiffs' complaint does not seek prospective injunctive relief. *See* Compl. (Doc. 1) at Prayer for Relief. Even if it did, the Eleventh Amendment would still bar their Section 1983 claims because the "primary thrust" of plaintiffs' lawsuit is to recover money damages. *See Ernst v. Rising*, 427 F.3d 351, 367-368, 371 (6th Cir. 2005) (Section 1983 claims against the state in federal court were barred because "[t]he challenged requests for relief are either monetary by their very terms or are ancillary to nothing but monetary relief"); *see* Compl. (Doc. 1) at Prayer for Relief.

6)     Plaintiffs' argument that their Section 1983 claim is timely based on the "continuing violation" doctrine is meritless for the reasons previously discussed.

## VI.     LEAVE TO AMEND SHOULD BE DENIED.

Plaintiffs' alternative request for leave to file an amended complaint should be denied. Plaintiffs have had three years to perfect their complaint following the filing of the first Strauss complaint on July 16, 2018. *See Garrett*, Compl. (Doc. 1). Plaintiffs also are represented by the same counsel for plaintiffs in the *Nutter* and *Ratliff* cases, in which amended complaints were filed and Ohio State's motions to dismiss have been pending since August 31, 2020. The complaint in the above-captioned action is modeled after, and virtually identical to, the amended complaints in the *Nutter* and *Ratliff* cases. Based on the motion to dismiss briefing in *Nutter* and *Ratliff*, plaintiffs have had clear notice of the numerous deficiencies in their complaint for more than a year. Granting leave to file another amended complaint would only cause undue delay.

In addition, any amendments would be futile because they would not change the dispositive, immutable fact here—that plaintiffs' claims based on conduct occurring decades ago are barred by the two-year statute of limitations. *See*, *e.g.*, *Feely v. Warden, Chillicothe Corr. Inst.*, No. 2:16-CV-619, 2018 WL 1905644, at *2 (S.D. Ohio Apr. 23, 2018) (Watson, J.) ("A motion to amend is appropriately denied if the amendment would result in undue delay or would

be futile.") (citing *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010)). Leave to amend should be denied.

## VII.    CONCLUSION.

Given plaintiffs' allegations, all meant to establish the sexual abuse and harm they endured, it is not plausible for their counsel to now advise the Court that they were not aware of their own circumstances and dealings with Strauss.  This Court should review those allegations, applying its own "judicial experience and common sense" as required by *Iqbal* and *Twombly*, and hold that plaintiffs Title IX claims are time-barred.  For the reasons stated above, plaintiffs' Complaint (Doc. 1) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:     /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        Phone: (614) 365-4100
        Fax: (614) 365-9145
        E-mail:carpenter@carpenterlipps.com
                bricker@carpenterlipps.com
                barthel@carpenterlipps.com

        Special Counsel for Defendant
        The Ohio State University

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically on September 2, 2021. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.


<u>/s/ Michael H. Carpenter</u>
Trial Attorney for
Defendant The Ohio State University