**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| NICHOLAS NUTTER, et al., | : | | |
| Plaintiffs, | : | Case No. | 2:19-cv-02462 |
| | : | JUDGE Michael H. Watson | |
| | : | Chief Magistrate Judge Elizabeth P. Devers | |
| ROCKY RATLIFF, | : | | |
| Plaintiff, | : | Case No. | 2:19-cv-04746 |
| | : | JUDGE Michael H. Watson | |
| | : | Chief Magistrate Judge Elizabeth P. Devers | |
| MICHAEL CANALES, et al., | : | | |
| Plaintiffs, | : | Case No. | 2:21-cv-02562 |
| | : | JUDGE Michael H. Watson | |
| | : | Chief Magistrate Judge Elizabeth P. Devers | |
| -vs- | : | | |
| | : | | |
| THE OHIO STATE UNIVERSITY, | : | | |
| Defendant. | : | | |

**PLAINTIFFS' MOTION FOR RECUSAL AND INTRADISTRICT TRANSFER**

Now comes the above Plaintiffs, by and through counsel, and asks for the Honorable

Michael H. Watson to recuse himself from their respective cases.  Further, the Plaintiffs request

that their cases be transferred to the Southern District of Ohio, Western Division in Cincinnati,

Ohio.  The reasons for said Motion are more fully set out in the Memorandum in Support,

attached hereto, and incorporated herein by reference.

Respectfully submitted,


/s/ J.C. Ratliff_____
J.C. Ratliff (0027898)


/s/ Rocky Ratliff_____
Rocky Ratliff (0089781)

200 W. Center Street
Marion, Ohio 43302
Tel:    (740)383-6023
Fax:    (740)383-2066
Email:  attorney.ratliff@gmail.com

**MEMORANDUM IN SUPPORT**

**FACTS**

On June 12, 2019, the Nutter, et al. Plaintiffs filed their Complaint against OSU in Case

Number 2:19-cv-02462.  On October 25, 2019, Plaintiff Rocky Ratliff filed his Complaint

against OSU in Case Number 2:19-cv- 04746.  On May 17, 2021, the Canales, et al. Plaintiffs

filed their Complaint against OSU in Case Number 2:21-cv-02562.  To date, these Plaintiffs in

these three cases believe there are over two hundred and seventy-five (275) active Plaintiffs with

pending complaints against OSU in regard to the actions of Dr. Richard Strauss, the environment

at OSU, OSU's continued indifference to Strauss' actions and their environment, as well as

OSU's cover-up and retaliatory actions.  OSU has actively filed and sought to dismiss all

Plaintiffs' claims on the basis of a waivable affirmative defense of the statute of limitations.

On January 17, 2019, the Court held a telephone status conference.  Present were

attorneys from only the Plaintiff groups of Garrett, et al. and Snyder-Hill, et al. as well as the

attorneys representing OSU.  During this hearing, the Court stated, "I want to start by saying that

2

I, and I think every member of this bench probably, have at one time or another served as an

adjunct professor of Ohio State.  I currently am teaching.  I say that only because if you want to

take shots, you can take shots.  I'm thinking that my intention is to stay on the case and,

nonetheless, I'm letting you know in the case you want to raise something." (See Plaintiffs'

Exhibit 1 p. 3-4).  Further, the Court stated that it did not intend to rule anytime soon on the

motions to stay discover or motions to dismiss.  (See Plaintiffs' Exhibit 1 p. 4).  The Court stated

that it wanted to see a copy of the Perkins Coie report in camera as soon as it was available as

well as any status updates that the OSU Board of Trustees had received to date.  (See Plaintiffs'

Exhibit 1 p. 4).  The Court further stated, "I know the board chairman, Mike Gasser.  He's a man

of his word.  He's told the victims that appeared before the board that, rest assured, the board is

not dismissing you.  We're committed to doing the right thing.  And the Court intends to see that

the right thing is done here."  (See Plaintiffs' Exhibit 1 p. 4).  Also, the Court stated, "I know that

Mr. Gasser said at that meeting which I believe happened in December but I'm not –I don't have

the date right at hand, but in any event, he indicated that the report would be – the investigation

would be over soon and we look forward to coming up with appropriate responses to action at

that time."  (See Plaintiffs' Exhibit 1 p. 4-5).  The Court noted that it was watching what was

going on with the men in Michigan as well.  (See Plaintiffs' Exhibit 1 p. 5).  The Court stated,

"This case needs to be handled in a manner that is worthy of a great institution and these victims

need to be dealt with as the Chairman of the Board of Trustees has indicated that he is committed

to doing."  (See Plaintiffs' Exhibit 1 p. 5).  Plaintiffs' Attorney Landskroner informed the Court,

"But we have not been able to gather the information that we need.  And the purpose of our

request for very limited discovery was, one, to get records that –our clients' own records which

we provided authorizations for to the university to counsel so we can have a complete

understanding of their window at Ohio State University if there is any documentation or what their medical records reflect; we have asked for information on Dr. Strauss which we've been able to get through public records request but only in a limited capacity; we have subpoenaed the medical board for information from Dr. Strauss…So we know there's additional information out there. We just don't have it." (See Plaintiffs' Exhibit 1 p. 8). Plaintiffs' Attorney Sharp stated, "we've done all of the same as well as attempted to talk to a number of the former higher-ups at OSU because they are formers, but because they're former employees or former officers, they have declined for whatever reason and they're entitled to do that. We cannot force them without the power of the Court. So we haven't had too much more luck other than what has been publicly available at this point." (Plaintiffs' Exhibit 1 p. 8-9). Finally, both attorneys recommended the Court appoint Layn Phillips as mediator because of his experience with the Michigan State University case and the University of Southern California case.

On May 17, 2019, the Perkins Coie investigation was released with findings that Dr. Strauss had abused at least 177 male students during his career at Ohio State. On or about May 24, 2019, the Chairman of the OSU Board of Trustees resigned.

On May 3, 2021, The Ohio State University filed their Notice of Intent to Establish Strauss Individual Settlement Program.

On May 13, 2021, the Court held a telephone Status Conference with the above Plaintiffs' Counsel present. The Court stated, "I don't want to detract from the importance of the settlement program that Ohio State has set up. I think it's a good thing. My understanding is that it runs for 120 days. So if it began last Friday on May the 7th, then I would suggest that it probably ends on September 7th. The Court will be issuing its ruling on the pending motions to dismiss no later than the end of September of 2021. I understand that some of the Plaintiffs

would have preferred an earlier decision on those motions, but it's been my goal from the outset

to try to resolve as many of these claims as possible through settlement. Any Plaintiff wishing to

settle before that decision is issued should keep the end of September in mind and be guided

accordingly. At this point, I don't see any need for oral argument on the pending motions to

dismiss. If that should change for any reason, I'll let you know." (See Plaintiffs' Exhibit 2 p. 3-

4).

On September 3, 2021, seven (7) Plaintiffs from the Nutter, et al. lawsuit gave their

notice of intent to settle with OSU, whereas thirty-nine (39) Plaintiffs from the Nutter, et al.

lawsuit rejected OSU's Strauss Individual Settlement Program. These rejecting Plaintiffs' cited

OSU's lack of accountability, the Plaintiffs' inability to obtain the fully publicly funded Perkins

Coie investigation, OSU's lack of safeguards for students and future students, the lack of

reasonable compensation in comparison to female sexual abuse survivors in recent Title IX

complaints with other universities, and a lack of settlement structure to account for the grooming

techniques of Dr. Strauss. These rejecting Plaintiffs did state that they would each settle for the

amount that the Court Appointed Mediator said that he thought was fair.

On September 9, 2021, the Court held a telephone Status Conference with the above

Plaintiffs' Counsel present. The Court stated that it called the conference because a question had

been directed to the Court's public information specialist by NBC News Digital. (See Plaintiffs'

Exhibit 3 p. 8 [Redacted]). Judge Watson stated the question concerned his impartiality, which

was of the utmost importance. (See Plaintiffs' Exhibit 3 p. 8 [Redacted]). Judge Watson stated,

"The Plaintiffs in this case have unquestionably been abused and taken advantage of by Dr.

Strauss." (See Plaintiffs' Exhibit 3 p. 9 [Redacted]). Further, he stated, "As you know, I

disclosed to all of you at a hearing on January 17, 2019, the fact that I serve as an adjunct

professor in the spring for the Moritz College of Law. No Party requested my recusal from the case based on that relationship. (See Plaintiffs' Exhibit 3 p. 9 [Redacted]) Watson stated that he didn't believe that disclosure of his wife's business, which sells Ohio State licensed products required disclosure by either the Code of Conduct for United States Judges or the advisory opinions issued by the Committee on Codes of Conduct interpreting the code. (See Plaintiffs' Exhibit 3 p. 9 [Redacted]). The Court stated, "The question has prompted me to look through prior transcripts to determine whether or not I had disclosed this fact to you as well. After a review of the transcripts, it appears that I have not and/or at least didn't do it on the record." (See Plaintiffs' Exhibit 3 p. 9 [Redacted]) Judge Watson pointed out that his wife is a licensee through OSU trademark and licensing and the contract is a license agreement, which permits the Judge Watson's wife to manufacture and sell to the public OSU authorized trademark merchandise. (See Plaintiffs' Exhibit 3 p. 9-10 [Redacted]). In turn, Judge Watson's wife has to pay a twelve (12) percent royalty to the university for each authorized Ohio State trademark product that his wife's business manufactures and/or sells. (See Plaintiffs' Exhibit 3 p. 10 [Redacted]). The Judge stated that he did not have a financial interest in the Ohio State University. (See Plaintiffs' Exhibit 3 p. 10 [Redacted]). The Court stated, "Nonetheless, the fact that a member of the public has inquired about it leads me to believe that Canon 3 of the Code of Ethics, the appearance of impropriety may be implicated." (See Plaintiffs' Exhibit 3 p. 10 [Redacted]). Judge Watson stated that he was giving each of the Plaintiffs' Counsel an opportunity to confer with their clients outside his presence and request recusal if it was felt that his impartiality was compromised. (See Plaintiffs' Exhibit 3 p. 10 [Redacted]). Finally, the Court stated, "I want to schedule an oral argument on the statute of limitations issue. I'll hold that oral argument in person on September 21st at noon." (See Plaintiffs' Exhibit 3 p. 9 [Redacted]).

## LAW AND ARGUMENT

### I.      Recusal of Judge Watson

The Due Process Clause, U.S. Const. Amend. 5, entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. *Marshall v. Jerrico, Inc*., 466 U.S. 238, 242 (1980). Title 28 U.S.C § 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id*. Importantly, it requires recusal if the judge's impartiality is reasonably questioned. *Caperton v. A.T. Massey Coal Co*. 556 U.S. 868 (2009), *U.S. v. Ransom* 428 F. App'x 587 (6th Cir. 2011), *In re Kensington International Ltd*., 368 F.3d 289, (3d Cir. 2004), *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001). Because the goal of U.S.C § 455(a) "is to exact the appearance of impartiality" recusal may be required even when there is no partiality. *In re Kensington International Ltd*., 368 F.3d at 303, *Potashnick v. Port City Construction Co*., 609 F.2d 1101, 1111 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). Generally, recusal under § 455(a) is necessitated by extra-judicial, as opposed to judicial factors. *See*, e.g., *In re Desilets*, 268 B.R. 516, 520. In the Sixth Circuit, this "extrajudicial source" factor has given rise to the frequent observation that disqualification under § 455 cannot be premised on purely judicial conduct. *See*, e.g., *United States v. Arhebamen*, 197 Fed. Appx. 461, 465 (6th Cir. 2006) (unpublished)(citing *Green v. Nevers*, 111 F.3d 1295, 1303-04 (6th Cir. 1997)); *Martin v. LaBelle*, 7 Fed. Appx. 492 (6th Cir. 2001) (unpublished); *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983). It focuses on what is revealed to the parties and the public, as opposed to the existence in fact of any bias or prejudice. *Potashnick*, 609 F.2d at 1111. The standard is that of an objective reasonable layperson outside the judicial system. *In re Kensington International Ltd*., 368 F.3d. *See Chitimacha Tribe of La. v. Harry L. Laws Co*.,

690 F.2d 1157, 1165 (5th Cir. 1982) (The movant "must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality"). Doubts must be resolved in favor of recusal. *US v. Patti*, 337 F.3d 1317 (11th Cir. 2003). "[T]he judge must document the reasons for his or her decision so that the decision may be reviewed, if necessary, by an appellate court." *U.S. v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir. 1994).

Disqualification is also required and cannot be waived by consent of the parties, in circumstances listed in § 455(b), including where the judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in … a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4); *See* also Code of Jud. Conduct Canon 3(C)(1)(c). This provision is absolute, requiring a judge to take recusal action without regard to any appearance of impropriety if there is such "financial interest." *Hall v. City of Williamsburg*, 768 F. App'x 366, 371 (6th Cir. 2019) (*citing* 28 U.S.C. § 455(b)(4)). A judge has an obligation to "inform himself about his personal and fiduciary financial interests and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." 28 U.S.C. § 455(c); *see* also Code of Jud. Conduct Canon 3(C)(2). Financial interest means "a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4); *see* also Code of Jud. Conduct Canon 3(C)(3)(c).

Further, Canon 2 of the of Code of Conduct for United States Judges states: A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities.

(A) Respect for Law. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

(B) Outside Influence. A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

(C) Nondiscriminatory Membership. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

Here, these Plaintiffs believe that there exists a factual basis for a "reasonable layperson" outside of the judicial system to form a view of impartiality or at least the appearance of impartiality regarding Judge Watson. This impartiality or appearance of impartiality stems from his wife's financial connection to OSU, the timing of Judge Watson's disclosure of said financial connection to OSU, the reason for Judge Watson's disclosure, and Judge Watson's failed full disclosure of his OSU connection. For these reasons, any reasonable person outside the judicial system would believe that Judge Watson is now partial or at a minimum appears to be partial toward OSU.

   a.    **Financial Connections to The Ohio State University**

Judge Watson has significant financial ties to the Defendant The Ohio State University. During the telephone conference on September 9, 2021, it was revealed that Judge Watson's wife is a manufacturer and seller that has an official license with the Defendant, pays a royalty fee, and sells directly to the Defendant and to the general public. It is now these Plaintiffs understanding that Judge Watson's wife has a successful business connection with The Ohio State University. In fact, a simple search of The Flag Lady's Flag Store website shows this relationship. The website states, "Quality Ohio State Buckeye Flags, Clothing, & Décor. Since

9

1980 we've provided the Ohio State Buckeye Football team with the flags that the cheerleaders

bring on the field.  We flag the team!"  (See Plaintiffs' Exhibit 4 p. 1).

It was reported by the Columbus Dispatch that The Flag Lady had a direct contract with

the Defendant worth approximately $16,000.  (See Plaintiffs' Exhibit 5).  Being that the median

individual income in United States of America is about $31,000, $16,000 is a substantial amount

of money for a layperson.  In addition, in approximately 2020, these Plaintiffs believe that some

if not all incoming freshman students received an OSU flag made by The Flag Lady.  (See

Plaintiffs' Exhibit 6).   For example, this past year's incoming class was 11,318 students, if the

flag in question retails at $29.99, and OSU purchased the flags in question at that figure, The

Flag Lady made a gross total of $339,426.82.  Obviously, this gross amount is extremely

sufficient to raise questions of impartially in any lay person.  Moreover, this number does not

include the gross sales of the OSU licensed merchandise that the wife of Judge Watson sells to

the general public.  However, none of the above numbers were disclosed by the Court, the

Defendant, The Ohio State University, its respective Counsel, or the Ohio State Attorney

General's Office.  In fact, these Plaintiffs are just left to wonder the nature of this business

relationship with The Ohio State University.

> **b.     The Timing and Reason of Judge Watson's Disclosure**

These Plaintiffs have a difficult time with the rationale for the late timing and reasoning

for the disclosure.  Certainly, this shows a total lack of impartiality.  It appears that Judge

Watson only disclosed the Judge's wife's relationship with The Ohio State University due to a

media inquiry.  Second, Judge Watson stated that he didn't believe that he had a duty to disclose

this relationship.  If true, then why would the Court feel it necessary to review the transcripts to

find whether this fact was disclosed to the Plaintiffs.  Third, not only did the timing of the

disclosure happen after a media inquiry, but it also happened right before this Court was set to rule on the Defendant's Civ. R. 12 (b)(6) motion.  It seems odd that the Plaintiffs in some of these cases have been waiting for a ruling for over two years, in other Plaintiffs cases over three years, and on the eve of said ruling, a disclosure of an impropriety of this magnitude is revealed to the Plaintiffs.  Finally, Plaintiffs are very worried at the prospect of having a partial Court when on the eve of a ruling regarding the long-awaited Civ. R. 12 (b)(6) motion, these Plaintiffs are now being awarded an oral hearing.  In May 2021, on the telephone status conference, Judge Watson stated that he felt an oral hearing was not necessary, but now that the media has shed light on a possible financial connection that Judge Watson has with OSU, all the Plaintiffs are being granted a hearing.

### c.  Possible Failed Disclosures Regarding The Ohio State University

Considering the recent disclosure, these Plaintiffs have been focused on researching the Court instead of their case with OSU.  The Court stated very clearly that unquestionably these Plaintiffs have been abused and taken advantage of by Dr. Strauss.  Yet instead of focusing on their battle with OSU, the Plaintiffs have been searching for this Court's connection to OSU.  It has come to the Plaintiffs attention that Judge Watson and his wife have always actively participated in the annual Buckeye Cruise for Cancer.  Over the last fourteen (14) years, the Buckeye Cruise for Cancer has raised over $25 million for The Ohio State University Comprehensive Cancer Center – Arthur G. James Cancer Hospital and Richard J. Solove Research Institute (OSUCCC – James).  (See Plaintiffs Exhibit 7).  In fact, both Judge Watson and his wife have been recognized on social media for their noble efforts in this fundraising event.  (See Plaintiffs Exhibit 8).

11

It is Plaintiffs' belief that on this cruise are some of the most influential, famous staff, and alumnus of OSU, such as former head football coaches like Urban Meyer and current Athletic Director Gene Smith.  This cruise is full of OSU branded activities, from concerts to former and current professional athletes with OSU ties and where the cruisers can meet and greet these athletes.  Moreover, The Flag Lady, contributes a sizable donation of $10,000 in order to achieve the "1st and 10" Donors Club mark on the cruise as well as provides a sponsorship benefit of a custom-made sponsor banner hand sewn by the Flag Lady's Flag Store as a reward for achieving any of the tiered donor levels.  (See Plaintiffs Exhibit 9 and 10).  Also, one can reasonably assume that during the cruise the Flag Lady's merchandise is advertised, therefore increasing the amount of her monetary revenue.  Although these Plaintiffs see this as a noble gesture, said Plaintiffs fail to see how vacationing with The Ohio State University, Brutus the Buckeye, the Buckeye Cheerleaders, Alumni, and Numerous OSU staff allows the Court to remain impartial. In fact, these events occurred while this case has been pending.

Nearly three years after the commencement of this case, the case remains in the pleadings stage. Any layman could see that the impartiality of this Court or at a minimum an appearance of impartiality of this Court is in question and a whole slew of questions come to mind such as: Why did the Court not disclose the financial ties at the beginning of his being assigned to the case instead of when reporters started to ask questions about his financial ties? What discussions did the Judge have, if any, on the Buckeye Cruise ship with fellow high-level donors or officials of the university? What is the full nature and scope of earnings made by the Judge's wife from The Ohio State University directly and indirectly? What party to a lawsuit, who is hoping to prevail on their lawsuit, would not want the presiding Judge to have a Professional, Charitable,

and Business interests with that particular party?  Just as in the famous line from the

Shakespearian *Hamlet*, "Something is rotten in the State of Denmark."


## II.     Seeking Intradistrict Transfer

28 U.S.C. §1404(b) governs intradistrict civil transfers. Under 28 U.S.C. §1404(b),

"[u]pon motion ... any action, suit or proceeding of a civil nature or any motion or hearing

thereof, may be transferred, in the discretion of the Court, from one division in which pending to

any other division in the same district."  Any party can initiate such a transfer, including the

Plaintiff.  *Phillip Carey Mfg. Co. v. Taylor* 286 F.2d 782, 784 (6th Cir. 1961).  Such transfers are

"subject to the same analysis as under §1404(a) but apparently judged by a less rigorous

standard."  *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989).

28 U.S.C. §1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest

of justice, a District Court may transfer any civil action to any other District or Division where it

might have been brought or to any District or Division to which all the parties have consented."

The party seeking transfer under §1404(a) bears the burden of showing that the relevant factors

weigh "strongly in favor of" transfer.  *Boyajyan v. Columbus Fin. Grp., Inc.*, 2007 WL 4410242,

at *1 (S.D. Ohio Dec. 13, 2007), quoting *Centerville ALS v. Balanced Care Corp.*, 197 F.

Supp.2d 1039, 1049 (S.D. Ohio 2002).  The factors which a District Court may consider in

deciding a §1404(a) motion are the following:

In ruling on §1404(a) Motions, Courts have not limited their consideration to the three

enumerated factors in §1404(a) (convenience of parties, convenience of witnesses, or interests of

justice), and, indeed, commentators have called on the Courts to "consider all relevant factors to

determine whether on balance the litigation would more conveniently proceed and the interests

of justice be better served by transfer to a different forum." 15 Wright, Miller and Cooper, [Federal Practice and Procedure: Jurisdiction and Related Matters, (2d Ed. 1986)], §3847.  While there is no definitive formula or list of the factors to consider, ... courts have considered many variants of the private and public interests protected by the language of §1404(a).

The private interests have included: Plaintiff's forum preference as manifested in the original choice, ... the Defendant's preference,...; whether the claim arose elsewhere, ...; the convenience of the Parties as indicated by their relative physical and financial condition, ...; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, ...; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum),...

The public interests have included: the enforceability of the judgment, ...; practical considerations that could make the trial easy, expeditious, or inexpensive, ...; the relative administrative difficulty in the two fora resulting from court congestion, ...; the local interest in deciding local controversies at home, ...; and the public policies of the fora,...;

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir.1995) (internal citations omitted); see also *Slate Rock Const. Co. Ltd. v. Admiral Ins. Co.*, 2011 WL 3841691, *6 (S.D. Ohio Aug. 30, 2011).  "A district court deciding a §1404(a) motion 'has broad discretion to grant or deny' the requested transfer." *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, 2012 WL 4343103, at *2 (S.D. 3 Ohio Sept. 21, 2012), quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).  *General Motors Corp. v. Volpe*, 321 F. Supp. 1112 (D.Del.1970) (The possibility of prejudice to the plaintiffs flowing from that transfer.).  Transfer should be effectuated because it is in the interest of justice, and serves public, private interests, and is not inconvenient.

The most important statutory factor in the 1404(a) analysis is the interest of justice. This factor is nebulous, but the courts have spoken to the boundaries of it.  The interest of justice is fairness and equity to both parties.

Here, in light of the recent disclosure, the reasons of the recent disclosure, and the timing of said disclosure, these Plaintiffs respectfully request that this case be transferred to the Southern District of Ohio Western Division at Cincinnati.  The Plaintiffs request an intradistrict transfer because all of judges in the Eastern District have ties to OSU.  The Judges Hon. Algenon L. Marbley; Hon. Edmund A. Sargus, Jr.; and Hon. Sarah D. Morrison, have been/or are employed by OSU.  Regarding the Western Division at Cincinnati, only one of the Article III Judges have any ties to OSU.  The possibility of prejudice is negligible.  The division courthouse these Plaintiffs are in currently and from which they are requesting transfer from is 4.4 miles away from the OSU Campus, whereas the division courthouse that is being requested is 110 miles away from the OSU Campus.  The Court must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed, and the interests of justice be better served by transfer to a different forum."  The overarching factor here is the partialness of the court, and the appearance of impartialness of the judiciary.  A Federal Judge in Cincinnati will probably not have direct ties to OSU, the jurors will be less likely to be unconditional OSU sports fans, and the trial will not be held in the heart of Buckeye Football Country.  Further, if there is ever a need to reconvene mediation, the mediator selected by this Court is a Federal Judge in Cincinnati.

Convenience is the second statutory factor in the 1404(a) analysis.  There is no major inconvenience to either the Plaintiffs or the Defendants.  These above Plaintiffs live all throughout the United States.  The change in the venue will not affect their attendance to any

mandatory hearing or trial since the case is still in the pleading phase.  The transfer to the

Cincinnati Federal Court will also not materially affect the Defendant OSU.  The Counsel for

OSU are not disabled or mobility impaired and are representing the Ohio Attorney General's

Office, which has statewide jurisdiction.  The witnesses for the Plaintiffs, or the Defendant, that

might need to appear also live all throughout the United States.  From party testimony to expert

witnesses, witnesses in this case are from all over the US.  The change from Columbus to

Cincinnati would only affect their travel and lodging plans.  The availability of books and

documents will not be a hindrance to the transfer. Most of the documents can be or have been

made into electronic copies and depositions have yet to begin.

       For the reasons listed above and to preserve the integrity and public opinion of integrity

of the judiciary, the Plaintiffs respectfully request the Court transfer the case to the Southern

District of Ohio Western Division at Cincinnati.

                                              Respectfully submitted,


                                              /s/ J.C. Ratliff_____
                                              J.C. Ratliff (0027898)


                                              /s/ Rocky Ratliff_____
                                              Rocky Ratliff (0089781)

                                              200 W. Center Street
                                              Marion, Ohio 43302
                                              Tel:    (740)383-6023
                                              Fax:    (740)383-2066
                                              Email:  attorney.ratliff@gmail.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing document was filed and

served, via the Court's CM/ECF system on September 19, 2021, on all counsel of record.

/s/ Rocky Ratliff_____

Rocky Ratliff (0089781)